151 La. 571, 92 So. 61; Succession of Bey, 46 La.Ann. 773, 15 So. 297, 24 L.R.A. 577.

In Succession of Connor, 165 La. 890, 116 So. 223, 224, this court said:

"We are not prepared to hold that even a formal interdiction deprives the person interdicted ipso facto of all power to make, alter, or revoke a will, even during a lucid interval."

For the reasons stated, and upon the authorities cited, we find that the judgment appealed from is correct, and it is affirmed, at appellants' cost.

O'NIELL, C. J., absent.

169 So. 456

## ROUBION v. SINCLAIR REFINING CO. OF FORT WORTH, TEX.

### No. 33398.

### June 30, 1936.

Daniel A. McGovern, Jr., Lewis R. Graham, and Harry R. Cabral, all of New Orleans, for appellant.

E. W. & P. N. Browne and Porteous, Johnson & Humphrey, all of New Orleans, for appellee.

ROGERS, Justice.

On August 30, 1932, Albert S. Roubion, the plaintiff, leased from the Louise Realty Company, Inc., for an automobile service station, the premises known as No. 445 North Rampart street, in the city of New Orleans. This lease was for two years, and on November 17, 1932, the lease was extended for three additional years. On September 15, 1932, Roubion leased to the Sinclair Refining Company, the defendant, that portion of the leased property "constituting an oil and gasoline service station, and excluding all other parts or portions of said premises," etc. This lease was for 23 months and 15 days. On December 13, 1932, Roubion leased the same property to the Sinclair Refining Company for a period of three years, to begin at the termination of the first lease. On October 7, 1933, Roubion, without notice to his lessee, the refining company, consented to a cancellation of his lease with the Louise Realty Company, Inc. Subsequently, the Louise Realty Company, Inc., leased the property to one Thomas J. Lusk, who in September, 1933, had leased the wash and grease rack from Roubion and had purchased from

Roubion the equipment belonging to him and contained in the oil station.

On November 3, 1933, Roubion brought this suit against the Sinclair Refining Company, claiming a large amount of damages for the alleged loss of his business, which he averred was due to a conspiracy entered into among defendant and its agents and representatives to deprive plaintiff of the oil station and the lease thereof and give them to another dealer. That in pursuance of the conspiracy, the defendant, through its employees, deliberately mixed and changed the high-grade gasoline ordered by plaintiff and substituted therefor in his pumps, through which he served his customers, a low-grade cheaper gasoline, causing them to become dissatisfied and to cease doing business with him. The petition referred to several occasions on which the alleged substitution was practiced, and charged that the practice had been followed on other occasions before petitioner became aware of it.

The defendant, in its answer, denied that the business conducted on the leased premises was plaintiff's business, and alleged that the business was defendant's, because on the day it leased the premises from plaintiff it entered into a separate agreement with plaintiff, whereby he became an employee of defendant. Errors in three of the deliveries were admitted and explained. Defendant denied that it was in any way responsible for the cancellation of plaintiff's lease by the Louise Realty Company, Inc., and averred that plaintiff did not properly operate the service station and did not pay the rent therefor, and his lessor demanded

the cancellation of the lease. Defendant denied that plaintiff was damaged, and denied any responsibility whatsoever to plaintiff.

After a trial on the merits, the court below rendered judgment in defendant's favor, rejecting plaintiff's demand. From that judgment plaintiff has appealed.

We find no error in the judgment of the district court. Our reading of the record has convinced us that there was no foundation whatever for plaintiff's charge that the defendant company and its representatives conspired to ruin the business formerly operated by plaintiff. On the contrary, the business was to all intents and purposes the business of the defendant company itself. The agreed rental between Roubion and the defendant company was only payable at the rate of 1 cent a gallon on all gasoline delivered at the station. And Roubion's compensation, as the exclusive agent of the defendant company, was the commission stipulated in the agency contract on all gasoline sold by him. It is clear, therefore, that it was to the interest of the defendant company that the business operated by plaintiff should be a successful business. The more gasoline sold, the more profit there was in it for the defendant company.

The local representatives of the defendant company testified that they were anxious for Roubion to succeed, and did everything in their power to assist him to succeed, because his success meant a larger volume of business for their company and a better showing for them locally and individually. Mr. Love, the general agent of the defendant company at New Orleans, was so anx-

ious for Roubion to succeed that he relaxed in his favor the rule of the company requiring all deliveries to filling stations to be made only for cash, and extended to him a credit of $466.67, which he was compelled personally to pay to the company. This amount has never been repaid to Mr. Love either by Roubion or by any person for his account.

On three occasions during the months of August and September, 1933, the gasoline delivered to the filling station was placed in the wrong tanks. But the testimony leaves no room for doubt that this was due to mistake and not to design. The error on two of the occasions was the result of the unfamiliarity of a new driver with plaintiff's premises, and on the other occasion the mistake was caused by an erroneous entry on the driver's memorandum pad. The mistakes were quickly discovered and the gasoline was properly changed into the proper tanks. Plaintiff never at any time complained to the defendant company that his business was falling off on account of those errors, and, as a matter of fact no harm was caused by them either to plaintiff or to the business operated by him.

The volume of plaintiff's business decreased to some extent during the months of August and September, 1933; but the decrease in business was not due to the fault of the defendant company, nor to any of its representatives. It resulted partly from the fact that those two months, as shown by the testimony, are the poorest of all the months of the year for the sale of gasoline due to the absence from the city on their vacations of so many users of gasoline; and partly from Roubion's inability to personally attend to the business because of ill health and the inefficient operation of the filling station by his 15 year old son. Roubion died shortly after this case was tried in the district court.

In addition to the revenue derived from his lease and agency contracts with the defendant company, the plaintiff also derived a revenue from the tenants of that portion of the property excluded from defendant's lease; nevertheless, plaintiff became involved in debt and was five months in arrears for his rent in the early part of October, 1932, when his lessor, the Louise Realty Company, Inc., after extending plaintiff every consideration, was compelled to demand the cancellation of his lease. Neither the defendant nor any of its representatives was responsible for plaintiff's unfortunate financial condition. They did not procure the cancellation of his lease; nor did they have any knowledge of its cancellation until after the cancellation was effected.

For the reasons assigned, the judgment appealed from is affirmed.